

December 2, 2020

United States District Court
District of Nevada
Honorable Judge Jennifer A. Dorsey
333 Las Vegas Blvd South
Las Vegas, NV 89101

      Re:    *FTC v. Lead Express, Inc, et al.*, Case No. 2:20-cv-00840 (D. Nv. May 11, 2020)

Dear Judge Dorsey:

    I represent the La Posta Band of Diegueno Mission Indians ("Tribe"), a federally-recognized Indian tribe, and, until it closed and dissolved, I also represented the La Posta Tribal Lending Enterprise ("LTLE"), formerly a defendant in *FTC v. Lead Express, Inc, et al.*, Case No. 2:20-cv-00840 (D. Nv. May 11, 2020).

    I write as a matter of prudence to inform the Court of material omissions in the FTC's Motion for Entry of Default Judgment Against Defendant La Posta Tribal Lending Enterprise ("Motion"), Docket No. 91, and the accompanying proposed order, Docket No. 92. As the LTLE no longer exists, and there is no successor, I have no client in this lawsuit. But as an officer of the court, admitted *pro hac vice*, and appearing before this Court in this matter, I believe I have an obligation under LR IA 11-7(a) and the Nevada Rules of Professional Conduct of candor to this Court to disclose the material omissions and supply pertinent information.[1]

    There are three material omissions in the Motion that require attention.

---

[1] The FTC's pursuit of a "dead" entity has created a precarious, which has compelled me to write this letter. As the Court is aware, the Tribe's sovereign immunity bars unconsented suit, but the Tribe's participation in litigation could be construed as consent. See *e.g.*, *Maysonet-Robles v. Cabrero* (1st Cir. 2003) (explaining the waiver-by-litigation doctrine: "[W]here a state voluntarily becomes a party to a cause, and submits its rights for judicial determination, it will be bound thereby, and cannot escape the result of its own voluntary act by invoking the prohibitions of the 11th Amendment" (quoting *Gunter v. Atlantic Coast Line R.R.*, 200 U.S. 273, 284 (1906)).) With this, the Tribe has chosen not to enter the litigation to advise the Court of the FTC's material omissions. The Tribe has not waived immunity or otherwise consented to suit and does not seek to join the lawsuit. However, the Tribe did authorize me, as counsel, "to take any necessary steps to advise the FTC and/or the Court of" the Tribe's decision to dissolve the LTLE. (See Exhibit 7, Resolution.) Without a party to defend, but as counsel of record and an officer of the court, I believe this letter is the appropriate mechanism to so advise the Court.

Honorable Judge Jennifer A. Dorsey
Page 2 of 7
December 2, 2020

  1.  The FTC fails to inform the Court that the LTLE did not respond or otherwise defend in this case because the LTLE and FTC engaged in good faith efforts to resolve the claim without litigation.  Although the Court is aware of the parties' stipulations for additional time, (Dkt. Nos. 39, 40, 66, 68, 74, 75) the FTC's Motion fails to inform the Court that all parties consented to extensions of the responsive deadline in furtherance of settlement efforts.

  The FTC is correct that the LTLE was served on May 19, 2020, but fails to inform the Court that the undersigned, on behalf of LTLE, emailed the FTC's counsel, Gregory Ashe, on May 21, 2020, and spoke to Mr. Ashe on the phone on May 22, 2020 to begin working on an amicable resolution.  (Exhibit 1.)  And the FTC acknowledges that "Tribal Defendant is represented by counsel and had over five months to respond or otherwise respond to the FTC's Complaint after it was served with the summons and complaint."  (Motion p. 11:17-18.)  But the FTC fails to inform the Court that as early as June 5, 2020, the parties discussed how to resolve the case and the type of language the FTC would expect in a final stipulated order.  (Exhibit 2.)

  From the start, I made it clear to Mr. Ashe that the LTLE intended to cooperate to resolve the FTC's concerns then dissolve and cease all operation.  In good faith, the LTLE stipulated to a preliminary injunction (Dkt. No. 37) and voluntarily surrendered all its bank accounts to the Receiver.  The LTLE voluntarily supplied the FTC with corporate financial disclosures and responded to informal discovery requests.  (Exhibits 3 and 4.)  The LTLE cooperated fully with the Receiver to supply access to records and to websites.  The LTLE even participated in the Rule 26(f) conference and agreed to entry of the discovery plan, although the parties committed to find a resolution before formal discovery would become necessary.  (Dkt. Nos. 70-71.)  As noted above, the FTC and LTLE parties agreed to continue delaying responsive deadlines several times to allow additional time to craft a resolution.  The LTLE was not absent, it was fully engaged.

  On August 18, 2020, after three months of following the FTC's lead, the FTC finally supplied its first draft stipulated order.  (Exhibit 5.)  Over the next several weeks, the undersigned and Mr. Ashe exchanged numerous drafts and had several phone calls to discuss terms.  Unfortunately, after the FTC failed to make meaningful and reasonable concessions.  Most critically, the Tribe sought language to make it clear when the proposed stipulated order would be fully satisfied, especially considering the LTLE intended to dissolve shortly after entry of the proposed stipulation.  While Mr. Ashe agreed that upon dissolution, there would be no future obligations to the Tribe or any tribal entity, and nothing prevented the LTLE from dissolving, the FTC refused to include language to confirm that dissolution would satisfy the proposed order. (Exhibit 6.)  In fact, I openly discussed whether dissolution may be a better resolution instead of wasting client and judicial resources with entry of a stipulated order that would ring hollow the moment the LTLE dissolved, but the FTC pursued entry of an order.  *Id*.

  Ultimately, the Tribe and LTLE were dissatisfied with the proposed stipulated order and concluded that the most efficient solution was to dissolve.  (Exhibit 8.)  It had already supplied the FTC with all of its bank accounts, access to all records and assets, and voluntarily answered all of the FTC's informal discovery requests.  *Id.*  Entry of an order seemed to be a meaningless

*pro forma* task as the FTC had everything it sought. Because of the negotiations, there had been no reason for the LTLE to file a responsive pleading or otherwise defend.

Additionally, the FTC fails to inform the Court that the LTLE existed as an arm of the Tribe and asserted tribal sovereign immunity as a complete bar to the lawsuit. The FTC never mentioned that at all times, the LTLE was prepared to move, pursuant to Fed. R. Civ. Proc. 12(b)(1), for dismissal based on its sovereign immunity. The parties agreed that the most expedient course to resolve the FTC's concerns was to avoid lengthy motion practice (over whether immunity bars jurisdiction) and subsequent appeals and to instead focus energies on an amicable resolution. (Exhibit 9.) So, when the FTC states that, "[t]he Tribal Defendant is liable for its own conduct and that of its business partners," it does so knowing that it negotiated to avoid the immunity defense and instead pursue settlement.

These omissions are material because the Motion draws the conclusion that the LTLE was wholly absent from any and all participation in the lawsuit. The statement that "[t]he Tribal Defendant, however, never filed an answer or otherwise responded to the FTC's Complaint. Instead, on October 22, 2020, the La Posta Band of Mission Indians passed a resolution dissolving the Tribal Defendant," does not inform the Court that the LTLE did not answer or otherwise defend because the FTC agreed it did not have to do so, as the FTC participated in good faith settlement discussions with the LTLE.

2.  The Court should be aware of the consequences of the LTLE's closure and dissolution. The FTC concludes that "the fact that the Tribal Defendant was recently dissolved does not impact this Court's ability to enter the request[sic] relief." (Motion p. 14:9-18.) And the FTC raises the LTLE's dissolution several times.[2] The FTC even cites several unpublished opinions to support its position that the LTLE dissolution has no effect. But the FTC's authority is fundamentally inapplicable because the LTLE was formed and dissolved according to tribal and common law, which certainly impacts the Court's ability to enter the default judgment.

The last authority the FTC relies upon, *Medamerica, Inc. v. MedAmerica Ass'n*, is perhaps the most helpful to understand the significance of the FTC's error. No. C-09-03567 JSW (EDL), 2010 WL 11589997 (N.D. Cal. Feb. 12, 2010), *report and recommendation adopted,* No. C 09-03567 JSW, 2010 WL 11589959 (N.D. Cal. Mar. 4, 2010). In *Medamerica*, the court explained that "[a] corporation's capacity to be sued is determined by the law of the state in which the corporation was organized. See Fed. R. Civ. P. 17(b)(2)," and the court analyzed the dissolution of the defendant under Michigan law, where the defendant was organized. *Id.* at *1 fn 1. The defendant dissolved during the pendency of the litigation without full compliance with Michigan law. *Id.* So, under Michigan law, the action was able to proceed, and the court, pursuant to Fed. Rule Civ. Proc. 65(d), was able to enjoin the defendant's

---

[2] See *e.g.,* Motion p. 5 fn 2:25-27; see also p. 12:1-2 ("[T]he La Posta Band of Missions Indians affirmatively decided to abdicate any responsibility to litigate by dissolving the Tribal Defendant."); Motion p. 11:11-12 ("The Tribal Defendant has not entered an appearance or made any formal filing disputing any of the FTC's allegations. Nor has it challenged the Clerk's entry of default."); Motion p. 12:12-15 ("[W]here a defendant fails 'to respond to or defend [an] action in any way, this factor does not preclude the court from entering default judgment against' the defendant.")

"officers, agents, servants, employees and attorneys; and other persons who are in active concert or participation with" them "to prevent all those who are currently operating Defendant's business from avoiding the Court's injunction." *Id*. at *5.

The same scenario—the court's consideration of dissolved *state-chartered entities*—exists in the other authority the FTC cites, all of which are also factually distinguishable. See *Nat'l Acad. of Recording Arts & Scis., Inc. v. Christian Grammy Awards*, 2020 U.S. Dist. LEXIS 125061, at *17 (C.D. Cal. Jul. 14, 2020) (considering a California corporation; *cf*., *e.g.,* Cal Code § 6720 ("(a) A corporation which is dissolved nevertheless continues to exist for the purpose of . . . prosecuting and defending actions by or against it . . . . (b) No action or proceeding to which a corporation is a party abates by the dissolution of the corporation or by reason of proceedings for winding up and dissolution thereof.")); *Sream, Inc. v. Blow and Tell Corp.* (E.D. Cal., May 3, 2019, No. 2:18-CV-03056 JAM AC) 2019 WL 1976433 (same); *Jae Yeon Textile Inc. v. AKM Textile Inc.* (C.D. Cal., Nov. 27, 2017, No. CV-01605349-SJOJEMX) 2017 WL 7156244 (same); *Next Gaming, LLC v. Glob. v. Gaming Grp., Inc.*, No. 214CV00071MMDCWH, 2016 WL 3750651, at *1 (D. Nev. July 13, 2016) (considering a Nevada corporation; *cf*., *e.g*., NRS 78.585 (""The dissolution of a corporation does not impair any remedy or cause of action available to or against it or its directors, officers or stockholders commenced within 2 years after the date of the dissolution . . . The corporation continues as a body corporate for the purpose of prosecuting and defending suits, actions, proceedings and claims of any kind or character by or against it . . . .")

The difference between dissolution of state-chartered entities and the LTLE can be explained by the exact reasoning in *Medamerica*: "[a] corporation's capacity to be sued is determined by the law of the state in which the corporation was organized." See also Fed. R. Civ. P. 17(b)(2). The FTC would have the Court believe that it can enter a default judgment here in the same way it can against a state-chartered entity that continues, by operation of state law, to exist for litigation purposes, but that is not the case. Tribal and common law control the LTLE dissolution.

I attempted to explain this to the FTC and I supplied authority to help the FTC understand the effects of dissolution of a tribal entity. (Exhibit 8.) On October 22, 2020, I informed the FTC that the Tribe chose to dissolve rather than pursue a one-sided settlement, and that "the Tribe's General Council voted and approved a Resolution closing the TLE and repealing the La Posta Tribal Lending Enterprise Ordinance, which constitutes the necessary step to permanently close and dissolve the TLE under the law of its formation—*i.e*., Tribal law and common law." (Exhibit 8.)

I also supplied the Supreme Court decision in *Oklahoma Nat. Gas Co. v. State of Oklahoma*, 273 U.S. 257, 259–60 (1927), which explains that under the common law, "a corporation which has been dissolved is as if it did not exist, and the result of the dissolution cannot be distinguished from the death of natural person in its effect . . . It follows, therefore, that as the death of the natural person abates all pending litigation to which such a person is a party, dissolution of a corporation at common law abates all litigation in which the corporation is appearing either as plaintiff or defendant." *Id*.

And on October 23, 2020, I supplied the Tribe's Resolution No. 202210 (Exhibit 7) closing the LTLE and repealing the Tribal Lending Enterprise Ordinance.[3] (Exhibit 8, Attachment.) The Resolution confirms that the Tribe "close[ed] and dissolve[d] the [LTLE] to ensure that the TLE may no longer operate or function in any capacity," and "that by closing the TLE and repealing the TLE Ordinance and its approving Resolution, General Council is terminating any and all outstanding agreements, obligations, debts, and liabilities and the General Council is not assigning or appointing any successor in interest or any entity to continue any function of the TLE." *Id*. Nonetheless, the FTC pursued the default explaining that "we recognize that the TLE no longer exists, but we believe it to be analogous to a dissolved LLC." (Exhibit 7.)

Like *Medamerica*, *Christian Grammy Awards, Sream, Jae Yeon Textile,* and *Next Gaming,* the FTC should have considered the laws under which the LTLE was organized and that, upon dissolution, the LTLE was "dead," which "abates all litigation." *Oklahoma Nat. Gas Co.*, 273 U.S. at 259-260. But even if the FTC disagreed with this authority, it should not have omitted the Supreme Court authority or the substance of the Tribe's resolution in its Motion. See, *e.g.*, *Archanian v. State*, 122 Nev. 1019, 1039–40 (2006) ("We remind the State of its obligation to disclose to a tribunal legal authority in the controlling jurisdiction known by the State to be directly adverse to its position and not disclosed by opposing counsel.")

This omission is material because, "[t]he general effect of the dissolution of a corporation is to put an end to its corporate existence for all purposes whatsoever and to extinguish its power to sue or be sued." *G.M. Standifer Const. Corp. v. Comm'r of Internal Revenue*, 78 F.2d 285, 286 (9th Cir. 1935); citing Thompson on Corporations (3d Ed.) vol. 8, §§ 6505, 6530; 14a C. J. 1200, 1201; 7 R. C. L. 735, 743. "The decisions of this court are all to the effect that a private corporation in this country can exist only under the express law of the state or sovereignty by which it was created," therefore, "[i]ts dissolution puts an end to its existence, the result of which may be likened to the death of a natural person." *Chicago Title & Tr. Co. v. Forty-One Thirty-Six Wilcox Bldg. Corp.*, 302 U.S. 120, 124–25 (1937). "How long and upon what terms a state-created corporation may continue to exist is a matter exclusively of state power." *Id*. at 127; *Horn Silver Mining Co. v. New York,* 143 U.S. 305, 312, 313 ("A corporation being the mere creature of the legislature, its rights, privileges, and powers are dependent solely upon the terms of its charter."); *Ashley v. Ryan*, 153 U.S. 436, 441, 443 ("The corporation, being the mere creation of local law, can have no legal existence beyond the limits of the sovereignty where created."); *New Jersey v. Anderson*, 203 U.S. 483, 493 ("The state which created this corporation had the right to fix the terms of its existence.")

It is only when "the law of the state of incorporation so provides, its existence may continue for a specified period after dissolution for the purpose of winding up its affairs, and

---

[3] "Modern tribal governments carry out their affairs at the legislative level by the enactment of resolutions. These enactments may create laws or regulations, address concerns affecting the tribe or a single tribal member, approve budgets large and small, or concern broad or minor policy issues." *Reising v. Mashantucket Pequot Tribal Nation*, No. CV-GC-2007-0149, 2010 WL 276240, at *4 (Jan. 25, 2010).

during that extended period of corporate life it may sue or be sued." *G.M. Standifer,* 78 F.2d at, 286. As the Supreme Court explained:

> To allow actions to continue would be to continue the existence of the corporation *pro hac vice*. But corporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation. The matter is really not procedural or controlled by the rules of the court in which the litigation pends. It concerns the fundamental law of the corporation enacted by the state which brought the corporation into being.

*Oklahoma Nat. Gas Co.*, 273 U.S. at 259–60. The Supreme Court acknowledged that even the federal government cannot prolong the life of a dead corporation:

> There is nothing in the Federal Constitution which operates to restrain a state from terminating absolutely and unconditionally the existence of a state-created corporation, if that be authorized by the statute under which the corporation has been organized. And it hardly will be claimed that the federal government may breathe life into a corporate entity thus put to death by the state in the lawful exercise of its sovereign authority.

*Chicago Title & Tr. Co.,* 302 U.S. at 128. "And, since the federal government is powerless to resurrect a corporation which the state has put out of existence for all purposes, the conclusion seems inevitable that, if the state attach qualifications to its sentence of extinction, nothing can be added to or taken from these qualifications by federal authority." *Id*. at 128–29 (1937). A default judgment against the LTLE would continue the existence of the LTLE *pro hac vice* and effectively nullify the Tribal law that brought the LTLE into existence.

The FTC is simply wrong to "*believe* [the LTLE] to be analogous to a dissolved LLC," (Exhibit 7, emphasis added) without considering tribal law because "[t]here must be some statutory authority for the prolongation of its life, even for litigation purposes." *Chicago Title & Tr. Co.,* 302 U.S. at 124–25. Despite this authority, the FTC asks the Court to act *ultra vires* and issue a default judgment against a "dead" entity.

      3.      When the FTC informs the Court that "the FTC seeks an equitable monetary judgment against the Tribal Defendant in the amount of $9,609,310," the FTC omits that it has an actual accounting of the LTLE's (and Tribe's) actual assets, which are less than $150,000, and that the LTLE already voluntarily surrendered all bank accounts to the Receiver. So while the FTC believes that $9 million "is entirely commensurate with the gravity of the Tribal Defendant's [alleged] violations while also considering its [alleged] role in the scheme," it omits that the actual amounts at issue are less than 2% of the FTC's claims. And while the FTC

Honorable Judge Jennifer A. Dorsey
Page 7 of 7
December 2, 2020

explained that it would include the $9 million figure it its papers, that it would be satisfied with the seizure of the accounts. (Exhibit 5.)

  This omission is material because without the true amounts at issue, the alleged harm and damages appear inflated and unnecessarily amplify the actual amounts that are recoverable, which is deceiving to consumers that were allegedly harmed, as well as to the public at large.

  This is respectfully submitted, and as noted above, I hope that it is a proper means to supply relevant information to the Court after my client has dissolved. The Tribe did authorize me to so advise the Court of its decision to dissolve the LTLE, and I have attempted to do so here. I am available to the Court should the Court need any additional information or clarification.

Respectfully,

*[signature]*

Justin Gray